UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KC Rental, LLC, *et al.*,

    Plaintiffs,

v.

WMK Automotive, Inc., d/b/a McGrath Kia of Highland Park *et al.*,

    Defendants.

Case No. 24 C 741

Judge Jorge L. Alonso

## Memorandum Opinion and Order

In their complaint, Plaintiffs KC Rental LLC and Luis Correa bring four claims against two groups of defendants:

- KC Rental brings two claims against Defendants WMK Automotive, Inc., d/b/a McGrath Kia of Highland Park ("McGrath Kia"), Abdullah Baloch, Cliff Krause, and George Res (the "McGrath Defendants"):

    o Claim I alleging consumer fraud under the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505/1 *et seq.*; and

    o Claim II alleging tortious interference with business expectancy under Illinois state law.

- Correa brings two claims against Defendants Officer Graff and the City of Highland Park (the "City Defendants"):

    o Claim III alleging false arrest under 42 U.S.C. § 1983, brought by Correa against Officer Graff; and

    o Claim IV alleging indemnity under 745 ILCS 10/9-102, brought by Correa against the City of Highland Park.

Each group of defendants has moved to dismiss the claims brought against it. As explained below, the Court grants the McGrath Defendants' motion to dismiss (ECF No. 22), denies the City Defendants' motion to dismiss (ECF No. 14), and dismisses Counts I and II of Plaintiffs' complaint (ECF No. 1) for failure to state a claim.

## Background

According to Plaintiffs' complaint, Correa runs KC Rental, a Florida-based company that purchases cars, rents them to customers, and then sells them after a few years. (Compl. ¶ 14, ECF No. 1.) In March 2023, Correa saw an online advertisement for a new blue Kia Forte GT for sale by McGrath Kia and began discussing potentially buying the vehicle with Defendant Abdullah Baloch, a McGrath Kia employee. (*Id.* ¶¶ 15–16.) Baloch and others in McGrath Kia's finance department told Correa that Correa would need to finance the purchase through McGrath Kia rather than outside financing, even though KC Rental regularly used its own finance company when purchasing vehicles. (*Id.* ¶¶ 17–18.) Correa explained this to McGrath Kia General Manager John Res, who said he would contact Defendant George Res—McGrath Kia's Finance Sales Manager—and ensure that KC Rental could use its own financing company and would not need to fill out a credit application with McGrath Kia. (*Id.* ¶ 19.) George Res confirmed this a few days later. (*Id.* ¶ 20.)

On April 1, 2023, Correa signed paperwork regarding KC Rental's purchase of the Kia Forte GT for $28,371.60, which was sent to McGrath Kia. (*Id.* ¶¶ 21–22.) On April 5, 2023, KC Rental's finance company, AFC Rental Division ("AFC") sent McGrath Kia a check for $28,371.60, which was drawn on AFC's account at Wells Fargo. (*Id.* ¶ 24.) The check was delivered to McGrath Kia the following morning. (*Id.*)

On April 7, 2023, Correa arrived in Chicago—Baloch picked him up at the airport and drove him to McGrath Kia. (*Id.* ¶ 25.) There, Baloch, Defendant Cliff Krause, and another McGrath Kia employee told Correa that he had to fill out a credit application and finance the purchase of the Kia Forte GT through McGrath Kia. (*Id.* ¶ 26.) Correa refused and explained that he had received permission from John and George Res to use outside financing and that McGrath

2

Kia had already received the check from AFC. (*Id.* ¶ 27.) Baloch told another McGrath employee that the check had already cleared and been deposited. (*Id.* ¶ 28.)

Nevertheless, and unbeknownst to Correa at the time, Baloch called the Highland Park Police Department and told police that Correa was trying to pay for a new vehicle with a bad check that the issuing bank had reported was invalid. (*Id.* ¶ 29.) Shortly after, Defendant Officer Graff from the Highland Park police department arrived, approached Correa, and told him not to move and that he was accused of passing a bad check. (*Id.* ¶ 30.) Correa explained to Officer Graff that McGrath Kia had already confirmed that the check had cleared and called AFC, who confirmed to Correa and to Officer Graff that the check was valid. (*Id.* ¶¶ 31–32.) After further speaking with Baloch, Krause, and other McGrath Kia employees away from Correa, Officer Graff returned, arrested Correa, and took him to the Highland Park police station. (*Id.* ¶ 33.)

At the station, Officer Graff again contacted AFC, who contacted Wells Fargo, which confirmed that the check AFC had sent to McGrath Kia was valid. (*Id.* ¶ 34.) After AFC relayed this information to Officer Graff, Correa was released from the police station without charges. (*Id.* ¶¶ 34–35.)

After these events, KC Rental did not receive the Kia Forte GT it had paid for and thus could not rent it out to customers. (*Id.* ¶ 37.) McGrath Kia did not return the money it had received from AFC until June 20, 2023, which resulted in KC Rental's $400,000 line of credit with AFC to be frozen through July 3, 2023. (*Id.*)

On January 19, 2024, KC Rental and Correa sued Defendants in this District. Plaintiffs sued the McGrath Defendants (McGrath Kia, Baloch, Krause, and George Res) for consumer fraud (Count I) and tortious interference (Count II); sued Officer Graff for false arrest (Count III); and sued Highland Park for indemnity related to the false arrest (Count IV). (Compl. ¶¶ 38–

3

63.) Both sets of defendants filed motions to dismiss the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which have been fully briefed. (ECF Nos. 14, 22.)

## Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This standard requires a complaint to contain sufficient "[f]actual allegations" to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). However, it need not "accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## Discussion

Defendants collectively challenge each of Plaintiffs' claims, so the Court addresses each in turn.

### I. Count I: Consumer fraud under the ICFA

In Count I of its complaint, KC Rental claims Defendants McGrath Kia, Baloch, Krause, and Res's actions were unfair and deceptive and therefore violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* Defendants argue the ICFA does not apply here because KC Rental was not a "consumer" under the ICFA and thus lacks standing to sue them. The Court agrees with Defendants and dismisses Count I.

The ICFA prohibits "unfair or deceptive acts or practices," including fraud and material misrepresentations. 815 ILCS 505/2. Any person, including a business, harmed by an ICFA violation may sue the violating party if the person is either a "consumer" as defined under the ICFA or satisfies the so-called "consumer nexus" test to establish standing. 815 ILCS 505/10a; *Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 738 (N.D. Ill. 2011). The ICFA defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e).

KC Rental does not qualify as a "consumer" under the ICFA because the cars it purchases, including the Kia Forte GT it attempted to purchase from McGrath Kia, are not for its own use. As KC Rental itself alleges, in the course of its business it "purchases new cars, rents them to consumers, and then sells them after a few years." (Compl. ¶ 14.) The cars KC Rental buys thus are not for its own use but ultimately are for its rental customers' use and for resale in the ordinary course of KC Rental's business. *See Our Pet Project LLC v. Int'l Paper Co.*, No. 22-

CV-1209, 2023 WL 143224, at *3 (N.D. Ill. Jan. 10, 2023) ("[A] business purchaser, one that merely resells a product, is not a consumer."); *Tile Unlimited*, 788 F. Supp. 2d at 739 (finding a plaintiff was not a consumer under the ICFA where it "does not retain possession of [the purchased merchandise] and does not use it to produce wholly separate products for the market. Rather, [the merchandise] is an inseparable component of the final [] product that Tile Unlimited installs"); *Brown v. Veile*, 198 Ill. App. 3d 513, 519, 555 N.E.2d 1227 (1990) (finding lack of ICFA standing because plaintiffs "are dealers in pre-owned mobile homes, buying them, and offering them for resale in the ordinary course of their trade or business" and thus were not consumers). KC Rental attempted to purchase a Kia Forte GT from McGrath Kia that would become part of its rental fleet for its customers' use and eventual resale. The fact that KC Rental initially leased, rather than sold, its cars to customers is immaterial—either way, the cars were purchased for the customers' use and also for eventual resale, which means that KC Rental was not a "consumer" under the ICFA for the Kia Forte GT it attempted to purchase from McGrath Kia. *See* 815 ILCS 505/1(e) (defining "consumer" as someone who purchases merchandise "for his use" rather than "for resale in the ordinary course of his trade or business"); *Our Pet Project*, 2023 WL 143224, at *3 (finding a plaintiff lacked ICFA standing where it purchased material "in order to pass it directly on to consumers" and thus "did not purchase [the] material as a consumer"); *see also AGFA Corp. v. Wagner Printing Co.*, No. 02 C 2400, 2002 WL 1559663, at *2 (N.D. Ill. July 10, 2002) (finding ICFA standing where the plaintiff "purchases film, plates and proofing . . . for use in the ordinary course of running its printing operations" and "does not resell these items to customers in any form," but also indicating that the plaintiff was not a consumer of the paper it purchased because the paper "ultimately reaches [its] customers").

Because the Kia Forte GT that KC Rental attempted to purchase was not for its own use but was instead for its customers' use and for resale, KC Rental does not qualify as a consumer under the ICFA and accordingly lacks standing to pursue its ICFA claim against the McGrath Defendants unless it meets the "consumer nexus" test. Since KC Rental does not claim to meet that test or allege such a nexus, it lacks standing under the ICFA. The Court therefore dismisses Count I.

## II. Count II: Tortious interference

To state a claim for tortious interference with business expectancy under Illinois state law,[1] KC Rental must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the McGrath Defendants' knowledge of the expectancy, (3) the McGrath Defendants' intentional and unjustified interference that induced or caused a breach or termination of the expectancy, and (4) damage to KC Rental resulting from the McGrath Defendants' interference. *See Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, ¶ 23, 229 N.E.3d 869. To support its tortious-interference claim, KC Rental alleges that it "was in the business of renting cars," that the McGrath Defendants knew that KC Rental was in that business and knew that KC Rental "was purchasing the blue Kia Forte GT for the purpose of renting it out to customers," that the McGrath Defendants "wrongfully and intentionally interfered with KC Rental's business when it refused to sell the Kia Forte GT . . . and when it kept the purchase price," and that KC Rental was unable to lease the Kia Forte GT, secure financing, or use the funds it had tendered for 89 days. (Compl. ¶¶ 51–54.)

---

[1] This tort is also known as tortious interference with prospective economic advantage, tortious interference with prospective business relationships, and tortious interference with prospective expectancies.

These allegations do not suffice. "Actions that form the basis of a tortious interference claim must be directed at third-party business prospects," and "a plaintiff must allege and prove facts which demonstrate that the defendants acted with the purpose of injuring the plaintiff's expectancies." *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007) (cleaned up); *see also Kapotas v. Better Gov't Ass'n*, 2015 IL App (1st) 140534, ¶ 80, 30 N.E.3d 572. Even assuming, without deciding, that KC Rental adequately alleges it had a reasonable expectancy of a valid business relationship with its prospective customers or financers of which the McGrath Defendants were aware, KC Rental does not adequately allege that the McGrath Defendants intentionally interfered with that expectancy. Instead, KC Rental summarily claims the McGrath Defendants intentionally interfered with KC Rental's business generally, without any allegation that the McGrath Defendants' actions were directed at KC Rental's business expectancy relating to its customers or financers. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 686 (7th Cir. 2014) ("Without any allegedly improper action directed to the relevant third party, this claim must fail."); *Timken Gears & Servs., Inc. v. Brad Foote Gear Works, Inc.*, No. 24 CV 60, 2024 WL 3201274, at *3 (N.D. Ill. June 27, 2024) ("this boilerplate lacks the kind of substance needed to suggest plausibly that [the defendant] committed any impropriety" and "fails to raise [the plaintiff's] right to relief on this claim above the speculative level"); *Kapotas*, 2015 IL App (1st) 140534, ¶ 81 ("The lack of specific allegations that the defendants acted with the purpose of injuring plaintiff's expectancies is fatal to his claim of tortuous interference with an economic expectancy.").

The mere fact that the McGrath Defendants' alleged actions harmed KC Rental's business does not mean that those actions intentionally and specifically interfered with KC Rental's business expectancy as to its customers, financers, or any other third party. *See Chartwell Studio,*

8

*Inc. v. Team Impressions, Inc.*, No. 19-CV-06944, 2023 WL 1992180, at *13 (N.D. Ill. Feb. 14, 2023) ("Defendants' efforts must be directed at a third party, and these allegations concern conduct directed at [the plaintiff]."); *Della Parola Capital Mgmt., LLC v. Blaze Portfolio Sys., Inc.*, No. 21 CV 321, 2021 WL 3674613, at *6 (N.D. Ill. Aug. 19, 2021) ("That [the defendant] knew plaintiff had hopes of future investment with the fund and nonetheless licensed its flawed software . . . is not an action directed at third-party business prospects. . . . Plaintiff has also failed to allege that [the defendant] acted with the purpose of injuring plaintiff's expectancies."); *Galinski v. Kessler*, 134 Ill. App. 3d 602, 607–08, 480 N.E.2d 1176 (1985) (rejecting argument that a claim can survive where "the interfering conduct complained of is directed towards the plaintiff as opposed to a third party"). Were it otherwise, then nearly any intentional harm to KC Rental's business would give rise to a tortious interference claim if the ultimate effect was to impede KC Rental's ability to lease vehicles to its customers. Tortious interference is not so broad, and KC Rental has failed to allege how the McGrath Defendants intentionally and specifically interfered with KC Rental's third-party business prospects. KC Rental thus has failed to state a claim for tortious interference and the Court dismisses Count II.

### III. Count III: False arrest

The City Defendants argue that Count III should be dismissed because Officer Graff had probable cause to arrest Correa following his discussions with Correa and McGrath Kia employees. To succeed on his Fourth Amendment false-arrest claim under 42 U.S.C. § 1983, Correa must show that Officer Graff arrested him without probable cause—thus, "probable cause is an absolute defense to such a claim." *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). Probable cause exists when "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution,

9

in believing . . . that the suspect has committed . . . an offense." *Id.* (cleaned up). This question is evaluated "from the perspective of a reasonable person in the position of the officer," and "[o]nly if the underlying facts claimed to support probable cause are not in dispute may the court decide whether probable cause exists." *Id.* "When the question of probable cause arises in a damages suit its resolution typically falls within the province of the jury, though a conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994). Here, taking Correa's factual allegations as true and in the light most favorable to him, Correa has stated a claim for false arrest.

Officer Graff argues that even based on Correa's own allegations, he had enough evidence to establish probable cause that Correa had attempted to pass a bad check once McGrath Kia employees told him so, and thus could effectively ignore contrary statements made to him by Correa and by AFC that Correa's check was valid. The Court disagrees at this stage. Sure, "[p]olice are entitled to act on information that may be inaccurate and let the courts determine whether to credit a suspect's claim of innocence," and "may act on the basis of inculpatory evidence without trying to tote up and weigh all exculpatory evidence." *Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006); *see also Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999), *as amended* (Jan. 7, 2000) ("[O]nce probable cause has been established, officials have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." (cleaned up)). But "[i]f a reasonable officer should be suspicious that the putative victims' complaints are not reliable, then the officer is obliged to conduct a further examination of the complaint." *Neiman v. Keane*, 232 F.3d 577, 581 (7th Cir. 2000).

10

Here, though Officer Graff might initially have been entitled to arrest Correa based solely on McGrath Kia's employees' report that he was attempting to pass a bad check, this plausibly was no longer the case once Officer Graff received contrary evidence, particularly from third party AFC, that suggested the McGrath Kia employees were lying and Correa had committed no crime, and Officer Graff was in an easy position to investigate further. *See Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 744–45 (7th Cir. 2003) (stating that "a potentially solid claim of alibi might warrant more credit than a bald assertion of innocence" and "officers were under no constitutional obligation to exclude every possibility that [a complaining witness] was not telling the truth, unless the inconsistencies were such that a reasonable officer would become suspicious"); *cf. Askew v. City of Chicago*, 440 F.3d 894, 896 (7th Cir. 2006) (affirming summary judgment and probable-cause finding involving "competing and inconsistent stories" because "police on the scene must act *yet lack the tools to determine immediately where the truth lies*" (emphasis added)); *Hartgers v. Town of Plaistow*, 141 N.H. 253, 256, 681 A.2d 82 (1996) (finding probable cause that the plaintiff was issuing bad checks where he "does not argue that [the complaining witness] was attempting to deceive the police, and the record reveals no evidence indicating that the police had any reason to question [the witness's] veracity"); *Sheik-Abdi*, 37 F.3d at 1247 (describing "the usual case" as one in which "the facts [an eyewitness] related to the officers (if he told the truth) established a crime, and the officers had no reason to disbelieve [the witness's] statement"); *but see Jones v. Gonzalez*, No. 22-CV-1333, 2023 WL 4549508, at *7 (N.D. Ill. July 14, 2023) ("[O]nce probable cause does exist, a police officer is under no obligation to weigh evidence against that conclusion. If a witness says he saw you rob the bank, there is probable cause to arrest you even if your co-workers offer alibi evidence." (cleaned up)).

11

Officer Graff points to several factors that he believes justified discounting Correa's and others' statements in a probable-cause analysis. For example, a suspect's own claims of innocence do not typically carry weight, *Askew*, 440 F.3d at 895, and Officer Graff says he could not verify AFC's identity and thus need not credit its statement that the check Correa had submitted was valid. But at this stage, the Court takes Correa's allegations, including those regarding the exculpatory statements made by him and AFC, in the light most favorable to Correa and concludes that they plausibly required Officer Graff to further investigate the matter before arresting Correa and accordingly do not warrant dismissal. *See Watkins v. Martin*, No. 13 C 9239, 2015 WL 2127216, at *3 (N.D. Ill. Apr. 29, 2015) ("Here, the record before the Court simply is not well-developed enough for the Court to determine as a matter of law what Defendant knew at the time of Plaintiff's arrest and whether those facts, in the context of Plaintiff's case, constitute probable cause."). Correa's allegations are not so self-defeating as to show probable cause at this stage based on the totality of the alleged circumstances known to Officer Graff at the time, and thus state claim for false arrest. The Court therefore denies the City Defendants' motion to dismiss and does not dismiss Count III.

## IV.    Count IV: Indemnity

Because Correa's false-arrest claim against Officer Graff survives, and Highland Park offers no independent basis to dismiss Correa's related indemnity claim, the indemnity claim likewise survives. The Court thus does not dismiss Count IV.

## Conclusion

Accordingly, the Court grants the McGrath Defendants' motion to dismiss (ECF No. 22), denies the City Defendants' motion to dismiss (ECF No. 14), and dismisses Counts I and II of Plaintiffs' complaint (ECF No. 1) for failure to state a claim. The Court sets a telephonic status

hearing for October 3, 2024, at 9:30 a.m. The parties shall submit a joint initial status report by September 30, 2024.

| | |
|---|---|
| **SO ORDERED.** | **ENTERED: September 18, 2024** |
| | _____<br>**HON. JORGE ALONSO**<br>**United States District Judge** |

13