IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KC Rental, LLC, and Luis Correa, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 24 C 741 |
| | ) | |
| WMK Automotive Inc. d/b/a | ) | Judge Jorge L. Alonso |
| McGrath Kia of Highland Park, | ) | |
| Officer D. Graff, and the | ) | |
| City of Highland Park, Illinois. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff KC Rental brings a claim for breach of contract against Defendant WMK Automotive. R. 45. WMK moves to dismiss. R. 50. For the reasons stated below, WMK's motion is denied.

**Legal Standard**

A Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must provide "a short and plain statement of the claim" and must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citations omitted). Facial plausibility exists when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a motion to dismiss, the Court "accept[s] the well-pleaded facts in the complaint as true and draw[s] reasonable inferences in the plaintiff's favor." *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024).

**Background**

KC Rental is a rental car company based in Delaware and operated by Luis Correa. R. 45 ¶ 3. WMK Automotive is a car dealership based in Illinois. *Id.* ¶ 5. In March 2023, Correa saw an online advertisement for a Kia Forte GT being sold by WMK, and Correa spoke with WMK about purchasing the vehicle. *Id.* ¶¶ 12–13. Correa originally spoke to Abdullah Baloch, an employee at WMK's McGrath Kia dealership in Highland Park, Illinois. *Id.* ¶ 14. Baloch stated that Correa could only purchase the vehicle if Correa filled out a credit application with WMK and financed the purchase through a WMK lender. *Id.* Correa then spoke with John Res, a General Manager for several McGrath Kia dealerships. *Id.* ¶ 16. Correa explained that KC Rental had its own finance company called AFC Rental Division, and that Correa preferred to finance the purchase through AFC. *Id.* ¶¶ 15–16, 21. John Res told Correa that he understood and that he would speak internally with George Res, a McGrath Kia Sales Manager. *Id.* ¶ 16. A few days later, George Res contacted Correa and stated that the deal could proceed, that Correa would not need to fill out a credit application with WMK, and that a purchase agreement ("Agreement") would be sent to Correa. *Id.* ¶ 17. Around April 1, 2023, Correa signed the Agreement and on April 5, 2023, AFC mailed a check for the purchase price of $28,371.60 to WMK. *Id.* ¶¶ 18–21. The check was drawn on an AFC bank account and delivered to WMK on April 6, 2023. *Id.* ¶ 21.

On April 7, 2023, Correa arrived at WMK's McGrath Kia dealership in Highland Park. *Id.* ¶¶ 22–23. After Correa arrived, Baloch stated that Correa had to fill out a credit application and finance the purchase through WMK. *Id.* ¶ 23. Correa refused and explained that he had received permission from John Res and George Res to use outside financing. *Id.* ¶ 24. Another employee at the dealership told Baloch that the check from AFC had already been deposited in WMK's bank and that it had cleared. *Id.* ¶ 25. Correa also called AFC, who confirmed that the check was valid.

2

*Id.* ¶ 29. Despite the validity of the check, Baloch refused to sell the vehicle and called the Highland Park Police Department. *Id.* ¶ 26. Highland Park Police Officer D. Graff arrested Correa and removed him from the dealership. *Id.* ¶ 30. KC Rental never received the Kia Forte and the $28,371.60 was not returned by WMK until June 20, 2023. *Id.* ¶ 34. As a result, and as alleged: "KC Rental lost the Kia it [had] paid for and was not able to rent it out. The money paid for the Kia was not returned by [WMK] until June 20, 2023, and KC Rental lost the use of those funds through that date, and suffered consequential damages including the loss of its line of credit with AFC through July 3, 2023, causing substantial pecuniary loss to KC Rental, LLC." *Id.* ¶ 34.

In Count I of the Amended Complaint, KC Rental alleges a claim for breach of contract by WMK. *Id.* ¶ 35–40. In Count II of the Amended Complaint, Correa alleges a claim under 42 U.S.C. § 1983 for false arrest against Highland Park Police Office D. Graff. *Id.* ¶ 41–45. Finally, in Count III of the Amended Complaint, Correa alleges a claim for indemnification against the City of Highland Park. *Id.* ¶ 46–49. WMK now moves to dismiss the breach of contract claim. R. 50.

## Discussion

In Illinois, to plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (citations omitted). Here, there is no dispute that the Agreement is a valid and enforceable contract.[1] The Court thus addresses the remaining three elements.

---

[1] WMK attaches the Agreement, labeled as "Standard Buyer's Order" to its motion to dismiss. R. 51-1. Generally, when ruling on a motion to dismiss, courts exclude documents attached to the motion. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Courts may, however, consider documents attached to a motion to dismiss if the documents are "referred to in the plaintiff's complaint and are central to his claim." *Id.* (citations omitted). This is a "narrow exception aimed at cases interpreting, for example, a contract" between the parties. *Id.* Here, the purchase agreement is a contract between the parties that was referred to in the complaint and is central to KC Rental's claim for breach of contract. The Court thus considers the Agreement.

I. **Performance and Breach**

WMK argues, in effect, that KC Rental did not substantially perform under the contract because the check was invalid. R. 51 at 11 (arguing that "the contract was voided when a member of [WMK] was allegedly informed that the check was invalid"). But when evaluating a motion to dismiss, courts accept the well-pleaded facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. KC Rental alleges that Correa called AFC, who confirmed that the check was valid. KC Rental also alleges that the check had been deposited and cleared with WMK's bank. WMK is free to dispute the validity of the check later in the case, for example at summary judgment or trial. But at this stage, the Court reasonably infers that KC Rental tendered a valid check to WMK. And when KC Rental tendered that check, KC Rental substantially performed. In turn, when WMK failed to deliver the vehicle, WMK breached.

II. **Damages**

WMK argues that even if KC Rental alleged consequential damages, it failed to allege direct damages as required by the Agreement. R. 51 at 12. In relevant part, the Agreement contains an exculpatory clause which provides that KC Rental is not entitled to receive "any consequential and incidental damages, including but not limited to property, damages for loss of use, loss of profits or income" when liability is based on a breach of contract claim. R. 51-1 at 2.

"In Illinois, exculpatory clauses generally are enforced on the grounds that competent parties must be free to make and stand by their own agreements." *Premier Transport, Ltd. v. Nextel Communications, Inc.*, 2003 WL 21267096, *4 (N.D. Ill. 2003) (citing *McClure Engineering Assocs., Inc. v. Reuben H. Donnelley Corp.*, 447 N.E.2d 400, 402-03 (Ill. 1983); *see also Platt v. Gateway Int'l Motorsports Corp.*, 813 N.E.2d 279, 283 (Ill. App. Ct. 2004) (citations omitted) ("Although exculpatory agreements are not favored and will be strictly construed against the

4

benefiting party, parties may allocate the risk of negligence as they see fit, and exculpatory clauses do not violate public policy as a matter of law."). To be valid and enforceable, the exculpatory clause "must contain clear, explicit, and unequivocal language referencing the type of activity, circumstance, or situation that it encompasses." *Platt*, 813 N.E.2d at 283. Before enforcing an exculpatory clause, courts should ensure it is not the result of unequal bargaining power. *See Locke v. Life Time Fitness, Inc.*, 20 F. Supp. 3d 669, 675 (N.D. Ill. 2014). Here, the exculpatory clause contains clear and explicit language. And the allegations do not suggest unequal bargaining power between the parties. To the contrary, Correa negotiated to obtain an agreement that matched his preferences, and the agreement was entered into between two corporate entities. The exculpatory clause barring consequential damages in the purchase agreement between KC Rental and WMK is thus valid and enforceable. In turn, to avoid the exculpatory clause, KC Rental must allege direct damages rather than consequential damages.

"Contract law distinguishes between direct and consequential damages, the difference lying in the degree to which the damages are a foreseeable (that is, a highly probable) consequence of a breach." *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 791 (N.D. Ill. 2016) (citing *Rexnord Corp. v. DeWolff Boberg Assocs.*, 286 F.3d 1001, 1004 (7th Cir.2002)). "Damages are awarded upon proof of a breach as direct damages where they were utterly foreseeable, indeed certain, and as consequential damages when they were reasonably foreseeable." *Id.* (citations omitted). In other words, direct damages "naturally flow from the breach" while consequential damages are "losses or injuries that do not flow directly and immediately from a party's wrongful act but rather result indirectly from the act." *Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*, 2015 IL App (2d) 140589, ¶ 31 (citations omitted).

5

Here, KC Rental alleges that it "lost the Kia it [had] paid for and was not able to rent it out." R. 45 ¶ 34. In effect, KC Rental seeks lost profits for the time period where WMK had failed to deliver the Kia and had also not yet returned the payment, from April 6, 2023 through June 20, 2023. "[L]ost profits can be categorized as either direct or indirect damages, depending on the situation." *Westlake Fin. Grp., Inc.*, 2015 IL App (2d) 140589 at ¶ 31. In this case, KC Rental was a rental car company, and it was thus utterly foreseeable that KC Rental would be renting out the Kia. In turn and as alleged, the lost profits naturally flow from WMK's breach of contract and failure to deliver the vehicle. The Court finds that KC Rental has sufficiently alleged direct damages. Because KC Rental has adequately alleged that at least certain damages were direct, the Court does not at this time decide whether the other damages it alleges are direct or consequential. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims.").

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss [51] is denied.

**SO ORDERED.**             **ENTERED: July 1, 2025**

**HON. JORGE L. ALONSO**
**United States District Judge**