IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KC Rental, LLC, and Luis Correa, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 24 C 741 |
| | ) | |
| WMK Automotive Inc. d/b/a | ) | Judge Jorge L. Alonso |
| McGrath Kia of Highland Park, | ) | |
| Officer D. Graff, and the | ) | |
| City of Highland Park, Illinois. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Luis Correa brings a Section 1983 claim for false arrest against Defendant Graff and a claim for indemnification against the City of Highland Park. R. 45. Graff and Highland Park move for summary judgment. R. 90. For the reasons stated below, the motion is granted.

**Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]peculation is not enough to create a genuine issue of fact for the purposes of summary judgment." *Tousis v. Billiot*, 84 F.4th 692, 696 (7th Cir. 2023) (citations omitted). Rather, the parties must support their arguments by citing particular parts of the record, including depositions, documents, declarations, and stipulations. *Horton*, 883 F.3d at 948. The Court views the facts and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.*

**Background**

Defendant Officer Darren Graff is a police officer for the City of Highland Park. R. 97 ¶ 2. On April 7, 2023, Graff was dispatched to the McGrath Kia auto dealership in Highland Park ("McGrath"). *Id.* ¶ 8. Prior to arriving at McGrath, Graff was told on dispatch that a fraudulent check had been used in attempt to purchase a vehicle. *Id.*

Upon arriving, Graff spoke first with McGrath employee Abdullah Baluch who stated that: (1) Correa had written McGrath a check; (2) the check had been deposited; and (3) Baluch had called Wells Fargo to verify the check, but Wells Fargo had informed Baluch that the check was not valid. R. 97 ¶ 9. Graff then spoke with Correa and requested to see Correa's identification, but Correa refused to provide it. *Id.* ¶¶ 10–11. Graff told Correa that Graff did not want to arrest Correa over a misunderstanding, but Graff needed to figure out what was going on. *Id.* ¶ 12. In response, Correa requested counsel and stated that: (1) the car had been paid for; (2) he worked at KC Rental; and (3) the check was a business check. *Id.* ¶¶ 11, 13. Correa also told Graff that Bank of America had told McGrath the check had been posted. R. 100 ¶ 26. Correa then handed his cell phone to Graff and Graff spoke to a woman identified as Danielle from Automotive Finance Corporation. R. 97 ¶ 14. Danielle stated that "the account is good," that Graff could "be assured that the money is there," and that "I can see in our system that it's you know, cleared. I just don't have any proof." R. 100 ¶ 24. At this point, Graff was unable to verify whether AFC was a legitimate company. R. 97 ¶ 34. Graff then asked Correa if he could speak with someone at KC Rental to verify Correa's employment. *Id.* ¶ 16. Correa directed Graff to speak with McGrath manager George Res to verify Correa's identity. *See id.* Graff did not speak with George Res, who was not physically present. *See* R. 100 ¶¶ 16, 32. Instead, Officer Nelson arrived on the scene and spoke with Baluch, who stated again that Wells Fargo had told him the check was not valid. R. 97 ¶ 20.

2

After spending approximately 24 minutes at McGrath as detailed above, Graff informed Correa that Graff was going to bring Correa to the police station to fingerprint him, and that Correa was being arrested for passing a fraudulent check. R. 97 ¶ 25. Correa was detained for approximately two and a half hours before being released without charges. *Id.* ¶ 37.

**Discussion**

"Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). The existence of probable cause to arrest "is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (citations omitted).

"The probable cause standard inherently allows room for reasonable mistakes, but qualified immunity affords an added layer of protection by shielding officers from suit for damages if a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the arresting officers possessed." *Abbott*, 705 F.3d at 714 (citations omitted). "Because qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, a law enforcement officer will be immune to claims based on an arrest without probable cause unless it is obvious that no reasonably competent officer would have believed that there was probable cause to arrest." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (citations omitted). "Thus, qualified immunity applies not only to those officials who correctly determine that probable cause to arrest exists, but also to those governmental officials who reasonably but mistakenly conclude that it does." *Id.*

3

Here, the Court finds that Graff is entitled to qualified immunity because he reasonably believed that he had probable cause to arrest Correa. As described above, Graff's reasonable belief was based on the fact that Baluch told Graff that Wells Fargo had told Baluch that the check was not valid. Correa disputes the reasonableness of Graff's belief based on three arguments.

First, Correa argues that it was unreasonable for Graff to credit Baluch because Baluch's statements were inconsistent. R. 98 at 8. Baluch told Graff that the check had been deposited and that the check was not valid. R. 97 ¶ 9. And in Graff's report, Graff wrote: "Mr. Baluch advised the subject that they had to ensure the check won't bounce in the next 10 days." R. 97-8. According to Correa, Graff should have understood that "[d]epositing a check and waiting 10 days for it to clear is not consistent with claiming that the check was 'invalid.'" R. 98 at 8. And according to Correa, these inconsistencies should have raised suspicions. *Id.* But a reasonable police officer in Graff's shoes is not required to be an expert in the process of depositing checks, or to know the exact point at which a bank officially determines the validity of a check. Critically, Baluch told Graff that a representative from Wells Fargo had informed Baluch that the check was not valid. And there is nothing on the record to suggest that Graff should have doubted whether Baluch had actually spoken with Wells Fargo or that a representative from Wells Fargo had actually made this statement. Graff thus reasonably credited Baluch's statement. As far as Graff understood, the bank had determined that the check was not valid, and this was sufficient to support Graff's reasonable belief of probable cause. *See Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (citations omitted) ("When an officer has received his information from some person— normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, he has probable cause. Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters.").

4

Second, Correa argues that Graff should have conducted further investigation and attempted to verify Baluch's statement by calling Wells Fargo. R. 98 at 10. But as discussed above, Graff reasonably credited Baluch's statement. And the "general rule is that when the police have information from a reasonably credible witness that a person has committed a criminal act, they may rely on that witness's account." *Seiser v. City of Chicago*, 762 F.3d 647, 654 (7th Cir. 2014). In other words, the "police need not exhaust all available avenues of investigation, including those that might potentially exculpate the suspect." *Id.*

Third, Correa argues that Graff should have credited Correa's claims of innocence and the call with AFC. R. 98 at 8–9. But "[i]t does not matter . . . whether the accused person denies the allegations [because] [p]olice need not conduct an investigation but may arrest and let prosecutors and courts determine who is telling the truth." *Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006). This "principle has qualifications: when, for example, the police know that the accuser may harbor a grudge against the accused, or when it is doubtful that the allegations (even if true) add up to a crime, then some follow-up may be required to make an arrest reasonable." *Id.* (citations omitted). But these issues were not present when Graff arrested Correa. Baluch had no apparent personal connection to Correa or reason to harbor a grudge. Indeed, Graff would reasonably believe that Baluch would be motivated to sell a car to Correa if Correa had presented a valid check. And if true that Correa had knowingly proffered an invalid check, this would have violated Illinois law. *See* 720 ILCS 5/17-1(B). Ultimately, "[w]hen it comes to probable cause, the question is not about weighing the evidence." *Jones v. Gonzalez*, 2023 WL 4549508, at *7 (N.D. Ill. July 14, 2023). Instead, the question is "whether there was enough evidence on one side of the scale to support a reasonable belief that a person had committed a crime." *Id.* And here, there was sufficient evidence to support Graff's reasonable belief that Correa committed a crime.

5

For these reasons, summary judgment is granted as to Count II of the Amended Complaint brought against Graff for false arrest. In turn, summary judgment is also granted as to Count III of the Amended Complaint brought against the City of Highland Park for indemnification. *See Baskins v. Gilmore*, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018) ("An indemnification claim necessarily will be tied to an underlying claim for liability.").

## Conclusion

For the reasons stated above, Defendants' motion [90] for summary judgment is granted and Counts II and III are dismissed. As Count I was resolved at [101], the case is now complete. Civil case terminated.

**SO ORDERED.**               ENTERED: November 21, 2025

_____
**HON. JORGE L. ALONSO**
**United States District Judge**